IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-156

No. 169A21

Filed 17 December 2021

IN THE MATTER OF: S.G.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 29 February 2021 by Judge J. Calvin Chandler in District Court, Brunswick County. This matter was calendared for argument in the Supreme Court on 12 November 2021, but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Jane R. Thompson for petitioner-appellee Brunswick County Department of Social Services.*

*Brian C. Bernhardt for appellee guardian ad litem.*

*Sydney Batch for respondent-appellant mother.*

PER CURIAM.

¶ 1  Respondent-mother Sally C. has had a lengthy history of substance abuse. On 6 June 2009, S.G.S.[1] was born to respondent-mother and the father, Sean S.[2] After receiving a report that Sarah, who was nearly two years old, had been seen walking

---

[1] S.G.S. will be referred to throughout the remainder of this opinion as Sarah, which is a pseudonym used for ease of reading and to protect the juvenile's privacy.

[2] Although the father was involved in the proceedings that led to the entry of the challenged termination orders, our opinion focuses upon the situation with respect to respondent-mother given that she is the only one of Sarah's parents who has challenged the lawfulness of the trial court's termination orders on appeal to this Court.

around a parking lot without proper supervision at a time when respondent-mother appeared to be under the influence of an impairing substance, the Brunswick County Department of Social Services filed a petition on 21 March 2011 alleging that Sarah was a neglected and dependent juvenile and obtained the entry of an order placing Sarah in nonsecure custody. On 19 April 2011, respondent-mother consented to the entry of an adjudication order signed by Judge Sherry Dew Tyler in which Sarah was found to be a neglected juvenile on the basis of respondent-mother's substance abuse. In a separate dispositional order, Judge Tyler ordered respondent-mother to comply with her case plan, which required respondent-mother to obtain a substance abuse assessment and comply with all resulting recommendations, attend all substance abuse-related appointments and therapy sessions, participate in random drug screens, and take no medications that had not been prescribed for her. As a result of the fact that respondent-mother had actively attempted to satisfy the requirements of her case plan, Sarah was returned to respondent-mother's physical custody on 14 June 2011. On or about 27 September 2011, Judge Tyler signed an order returning Sarah to respondent-mother's legal custody as well.

¶ 2 On 10 June 2012, respondent-mother was charged with driving while subject to an impairing substance and driving while license revoked. Following a home visit conducted by two social workers on 19 June 2012, during which Sarah was outside the residence without proper supervision, respondent-mother was impaired, and

respondent-mother admitted that she had sold her prescription medications in exchange for care for Sarah, DSS filed a second petition alleging that Sarah was a neglected and dependent juvenile and obtained the entry of an order placing Sarah in nonsecure custody. After respondent-mother acknowledged that she was unable to provide proper care for Sarah or identify anyone who could provide such care, Judge Tyler entered orders on 13 August 2012 finding Sarah to be a neglected juvenile and ordering respondent-mother to comply with the provisions of her case plan, which required respondent-mother to enter into a long-term in-patient substance abuse treatment facility, attend all substance abuse-related appointments and therapy sessions while awaiting admission to a long-term treatment facility, participate in random drug screens, refrain from taking any medications in the absence of a prescription, attend parenting classes and demonstrate the ability to use the skills that she had learned in those classes, and visit with Sarah.

Although respondent-mother refused to enter in-patient substance abuse treatment, she did agree to an alternative treatment proposal and was subsequently ordered to complete intensive outpatient substance abuse treatment. In an order entered on 15 December 2012 following a review hearing held on 27 November 2012, Judge Tyler authorized Sarah's trial placement in respondent-mother's home. On 17 April 2013, Judge Tyler authorized Sarah's return to respondent-mother's custody.

¶ 4          On 13 January 2014, DSS filed yet another petition alleging that Sarah was a neglected and dependent juvenile and obtained the entry of an order taking Sarah into nonsecure custody, with the filing of this petition having been precipitated by respondent-mother's 9 January 2014 arrest for possessing heroin, misdemeanor possession of controlled substances, driving while impaired, resisting a public officer, misdemeanor child abuse, and possession of drug paraphernalia.  On 26 March 2014, Judge Tyler (now Prince) entered an adjudication order finding that Sarah was a neglected and dependent juvenile based upon respondent-mother's ongoing substance abuse problems.  In a separate dispositional order entered on the same day, Judge Prince ordered respondent-mother to work with DSS to develop an appropriate case plan, with the plan to which respondent-mother eventually agreed having required her to enter in-patient substance abuse treatment, attend substance abuse group meetings until she actually entered in-patient treatment, attend all recommended substance abuse-related appointments and therapy sessions following her discharge from in-patient treatment, participate in random drug screens, refrain from taking any medications other than those that had been prescribed for her, attend parenting classes and demonstrate the ability to use the skills that she had learned in those classes, visit with Sarah and attend the child's medical and school-related appointments, provide financial support for Sarah, and seek employment following her release from in-patient treatment.  After respondent-mother tested positive for

the presence of drugs in April and May 2014, had been asked to leave the in-patient treatment facility, and was incarcerated during the months between August and December 2014, Judge Prince authorized DSS to cease making further efforts to reunify Sarah with respondent-mother and directed DSS to begin a trial home placement during which Sarah would live with her father.

¶ 5        In April 2015, respondent-mother was released from incarceration and the father relapsed.  On 20 May 2015, DSS filed a fourth juvenile petition in which it alleged that Sarah was a neglected and dependent juvenile in light of the fact that the father had left his employment and was having difficulties with substance abuse.  On or about 26 June 2015, Judge W. Fred Gore entered an order changing the permanent plan for Sarah to one of guardianship or adoption and authorizing DSS to cease attempting to reunify Sarah with the father and prohibiting either parent from visiting with Sarah.  Subsequently, DSS learned that respondent-mother had relapsed.

¶ 6        After realizing that she was pregnant, respondent-mother entered a one-year residential substance abuse treatment program for pregnant women on 16 September 2015.  In the meantime, Sarah was admitted to Holly Hill Hospital with a diagnosis of post-traumatic stress disorder, reactive attachment disorder, and alienation-deficit/hyperactivity disorder.  On 4 February 2016, respondent-mother relinquished her parental rights in Sarah in favor of respondent-mother's brother.  However, given

that respondent-mother's brother was unable to adopt Sarah, Judge Gore made respondent-mother's brother Sarah's guardian on 2 September 2016.

¶ 7      At some point after 2 September 2016, respondent-mother regained physical custody of Sarah in violation of the guardianship order, at which point Sarah began missing school and respondent-mother refused to work with the personnel at Sarah's school. In the aftermath of an incident in which respondent-mother was found in an unresponsive condition by Sarah's speech therapist, DSS filed a fifth petition alleging that Sarah was a neglected and dependent juvenile and obtained the entry of an order taking Sarah into nonsecure custody. After a hearing held on 9 July 2019, Judge Gore entered an order on or about 31 July 2019 finding that Sarah was a neglected and dependent juvenile and terminating the brother's guardianship. Although respondent-mother entered into yet another case plan, pursuant to which she was obligated to address her substance abuse difficulties, emotional and mental health problems, deficient parenting skills, and housing and employment-related issues, on 13 May 2019, her participation in substance abuse treatment became "stagnant" and the frequency of the treatment that she needed did not diminish. As a result, Judge Gore entered an order on 18 December 2019 changing the permanent plan for Sarah to a primary plan of adoption and a secondary plan of guardianship and authorizing DSS to cease making any effort to reunify Sarah with either parent. In the same month, respondent-mother was incarcerated yet again.

¶ 8     On or about 15 July 2020, DSS filed a petition alleging that respondent-mother's parental rights in Sarah were subject to termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1) (2019), and failure to make reasonable progress toward correcting the conditions that had led to Sarah's removal from the family home, N.C.G.S. § 7B-1111(a)(2),[3] and that the termination of respondent-mother's parental rights would be in Sarah's best interests.[4]     The issues raised by the termination petition came on for hearing before the trial court at the 28 and 29 January 2021 sessions of District Court, Brunswick County.  At the time of the termination hearing, respondent-mother remained incarcerated.  On 29 February 2021, the trial court entered an adjudication order finding that respondent-mother's parental rights in Sarah were subject to termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1), and failure to make reasonable progress toward correcting the conditions that had led to Sarah's removal from the family home, N.C.G.S. § 7B-1111(a)(2).  On the same date, the trial court entered a dispositional order concluding that the termination of respondent-mother's parental rights would be in Sarah's best interests and

---

[3] Although DSS asserted that Sarah was a dependent juvenile as defined in N.C.G.S. § 7B-101(9), it did not expressly allege that respondent-mother's parental rights in Sarah were subject to termination on the basis of dependency, N.C.G.S. § 7B-1111(a)(6) (2019).

[4] In spite of the fact that the petition correctly listed Sarah's name in the caption and although a copy of Sarah's birth certificate was attached to the termination petition, DSS alleged in Paragraph 3 of the termination petition that the name of the child at issue in this case was S.K.L.  After recognizing this error, the parties executed a pre-hearing stipulation in which, among other things, they consented to an amendment to Paragraph No. 3 of the termination petition to correctly state Sarah's name.

terminating respondent-mother's parental rights in Sarah.[5]  Respondent-mother

noted an appeal to the Court of Appeals from the trial court's termination order.[6]

¶ 9        Respondent-mother's appellate counsel has filed a no-merit brief on her client's

behalf.  In that brief, respondent-mother's appellate counsel identified a number of

issues that could potentially provide a basis for challenging the lawfulness of the trial

court's termination order, including whether the trial court had erred by determining

that respondent-mother's parental rights in Sarah were subject to termination on the

basis of neglect pursuant to N.C.G.S. § 7B-1111(a)(1) and whether the trial court

abused its discretion in determining that the termination of respondent-mother's

parental rights would be in Sarah's best interests.  Ultimately, however, the

respondent-mother's appellate counsel concluded that there was no non-frivolous

basis for challenging the lawfulness of the trial court's determination that

respondent-mother's parental rights in Sarah were subject to termination on the

---

[5] In addition, the trial court terminated the father's parental rights in Sarah.  In view of the fact that the father has not sought appellate review of the trial court's termination orders by this Court, we will refrain from discussing the provisions of the trial court's termination orders as they relate to the father any further in this opinion.

[6] Although respondent-mother's notice of appeal, which indicated that her appeal had been taken to the Court of Appeals rather than this Court, was defective, neither DSS nor the guardian ad litem has sought the dismissal of respondent-mother's appeal or lodged any other challenge to the Court's jurisdiction over this case.  As a result, we elect, in the exercise of our discretion, to treat the record on appeal as a petition seeking the issuance of a writ of certiorari and to allow that petition, *Anderson v. Hollifield*, 345 N.C. 480, 482 (1997) (holding that "an appellate court [has] the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner"), in order to reach the merits of respondent-mother's challenge to the trial court's termination orders.

basis of neglect, N.C.G.S. § 7B-1111(a)(1),[7] and that, since the trial court's termination orders contained findings of fact that were supported by the record evidence relating to the relevant dispositional factors delineated in N.C.G.S. § 7B-1110(a) and since the trial court's findings of fact provided adequate support for its dispositional decision,[8] there was no non-frivolous basis for challenging the lawfulness of the trial court's decision that the termination of respondent-mother's parental rights would be in Sarah's best interests. Although respondent-mother's appellate counsel communicated with respondent-mother for the purpose of advising respondent-mother that she had a right to file pro se written arguments for the

---

[7] Among other things, appellate counsel for respondent-mother noted that, while respondent-mother had experienced brief periods of sobriety and had plans to maintain sobriety and obtain employment, she remained incarcerated at the time of the termination hearing; had not successfully completed a number of court-ordered services, including substance abuse treatment; had regularly failed to submit to random drug screens and did not take her medications as prescribed; and had failed to show that she could provide proper care for Sarah despite completing parenting classes and having had the child returned, either legally or physically, to her custody on three different occasions.

[8] In concluding that the trial court did not abuse its discretion in concluding that the termination of respondent-mother's parental rights would be in Sarah's best interests, appellate counsel for respondent-mother pointed out that Sarah was two years old at the time that she had been initially removed from her parents' custody; that she had been in respondent-mother's custody on three different occasions after her initial removal from the family home; that Sarah had experienced eleven placements; that her mental health had deteriorated to the point that she had been diagnosed with post-traumatic stress disorder and reactive attachment disorder and had been committed to a mental health facility on one occasion; that, even though Sarah was not in a pre-adoptive placement at the time of the termination hearing, DSS believed that an adoptive home could be found for Sarah; that Sarah wanted to be adopted if she could not return to respondent-mother's care; that, as a result of her incarceration, respondent-mother had not visited with Sarah for months as of the date of the termination hearing; and that respondent-mother had only visited Sarah sporadically before entering custody.

Court's consideration and provided respondent-mother with the materials necessary to make such a filing, respondent-mother failed to submit any written arguments to the Court. Both DSS and the guardian ad litem filed briefs expressing agreement with the conclusion reached by respondent-mother's appellate counsel that the record did not disclose the existence of any arguably meritorious basis for challenging the lawfulness of the trial court's termination orders in this case.

This Court independently reviews issues identified by counsel in a no-merit brief filed pursuant to N.C. R. App. P. 3.1(e) for the purpose of determining if any of those issues have potential merit. *In re L.E.M.*, 372 N.C. 396, 402 (2019). After a careful review of the issues identified in the no-merit brief filed by respondent-mother's appellate counsel in this case in light of the record and the applicable law, we are satisfied that the findings of fact contained in the trial court's termination orders have ample record support and that the trial court did not err in the course of determining that respondent-mother's parental rights in Sarah were subject to termination and that the termination of respondent-mother's parental rights would be in Sarah's best interests. As a result, we affirm the trial court's orders terminating respondent-mother's parental rights in Sarah.

AFFIRMED.